LUMBERMAN'S UNDERWRITING
ALLIANCE, Plaintiff-Appellant,

v.

George W. ROMNEY, Secretary of
Housing and Urban Development,
Defendant-Appellee.

No. 74–2097.

United States Court of Appeals,
Sixth Circuit.

June 26, 1975.

Arthur M. Sebastian, Sebastian, Marsh, Durst & Redman, Columbus, Ohio, William H. Sanders, Blackwell, Sanders, Matheny, Weary & Lombardi, David C. Trowbridge, Kansas City, Mo., for plaintiff-appellant.

Carla A. Hills, Asst. Atty. Gen., New York City, William W. Milligan, U. S. Atty., Columbus, Ohio, William Kanter, Dept. of Justice, Mark N. Mutterperl, Washington, D. C., for defendant-appellee.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and HERMANSDORFER, District Judge.*

PER CURIAM.

Plaintiff/Appellant, Lumberman's Underwriting Alliance (Lumberman's), filed its claim for reinsurance payments under the Standard Reinsurance Contract between the parties as authorized by the Urban Property Protection and Reinsurance Act of 1968 (Act), 12 U.S.C. § 1749bbb–21. The complaint was dismissed following a trial without the intervention of a jury on June 6, 1974.

The elemental facts underlying this action arise in a context of diverse disturbances in Columbus, Ohio public schools in the general geographical area of the East Side Lumber Company. On Saturday, February 20, 1971, Gary Lee White, an eighteen year old black male, together with three other young men, climbed the fence and entered upon the property of the lumber company. White carried with him lighter fluid which he had purchased for the purpose of setting a fire. White set one fire which was extinguished by one of his companions. White then set another fire. All of the

* Honorable H. David Hermansdorfer, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

young men fled, and the ensuing loss by fire, insured by plaintiff, gave rise to this reinsurance claim for $174,928.00.

White was apprehended but none of the other young men were found. The trial judge incorporated into his findings of fact part of White's testimony and found less than credible White's testimony that he set the fire because it "was my way of fighting, when it was the riots."[1] Gary Lee White, at the time he testified, was a patient at the Lima State Hospital for the Mentally Insane, Lima, Ohio. The Court below, in finding lack of reinsurance coverage, expressly found that plaintiff had failed to demonstrate a racial motivation behind the actions of the four young men.

The reinsurance contract[2] contains the following definitions of the term "civil disorder":

SECTION XVI(8) . . .

(B) any pattern of unlawful incidents taking place within close proximity as to time and place and involving property damage intentionally caused by persons apparently having civil disruption, civil disobedience, or civil protest as a primary motivation, at least two of which incidents result in property damage in excess of $1,000 each; or

(C) any occurrence of property damage in excess of $2,000 caused by persons whose unlawful conduct in causing the occurrence clearly manifests their primary purpose of civil disruption, civil disobedience, or civil protest;

Upon a review of the district judge's findings of fact in regard to the definition set out in SECTION XVI(8)(B) we do not find them to be "clearly erroneous" because there is no proof within the criteria of the contract of two instances resulting in property damages in excess of $1,000 each.

We are unable to say, however, that SECTION XVI(8)(C) may not be applicable in this instance. In requiring the plaintiff to establish a racially motivated purpose we find the district court adopted too narrow a construction of the Act and construed too harshly against plaintiff contractual terms solely prepared by and insisted upon by the defendant. *Bituminous Casualty Corporation* v. *Lynn,* 503 F.2d 636 (6th Cir. 1974). For example, the fact situation in *Bituminous* was devoid of any suggestion of racial overtones. The purposes of the Act include the determination:

"[to] provide a Federal program of reinsurance against abnormally high property insurance losses resulting from riots and other civil commotion, placing appropriate financial responsibility upon the States to share in such losses." Urban Property Protection and Reinsurance Act of 1968, Pub. L.No. 90–448, § 1102(b).

Had the Congress intended a narrow construction of the Act and the Standard Reinsurance Contract all that was necessary was a clear simple declaration to that effect. The Act's use of "civil commotion" and the policy's textual use of the "civil disruption, civil disobedience, or civil protest" persuade us that no racially oriented motivation test can or should be engrafted by judicial construction upon the terms of the reinsurance policy.

We remand, therefore, to permit the district court to make specific findings as to whether the actions of White and his associates on the evening of February 20, 1971 constituted matters of civil disorder, SECTION XVI(8)(C), regardless of any racially motivated purpose.

---

1. Appendix, p. 93.

2. See: 35 F.R. 6125, April 15, 1970 as codified in 24 C.F.R. 1906.